ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED
2015 SEP 23 PM 3:03
DEPUTY CLERK _____

UNITED STATES OF AMERICA

v.

DR. YONNIE WU,
   aka SHUNYONG WU,
   aka SHUN Y. WU
   aka HIYONNIE WU

NO. 3:15-CR-247-L
(supersedes indictment returned
on June 3, 2015)

## SUPERSEDING INDICTMENT

The Grand Jury charges that at all times relevant to the Superseding Indictment:

1. Between in or about August 1, 2009, and in or about July 2015, the defendant, Dr. Yonnie Wu, was the Director of the Mass Spectrometry Center in the Chemistry and Biochemistry Department at Auburn University, which is located in Alabama.

2. Wu held a Ph.D. from the University of Illinois at Urbana-Champaign and had published dozens of papers in scientific journals in the field relating to agricultural biotechnology, analytical chemistry, biophysics, and mammalian cell biology. Wu had over ten patents both issued and pending from working in industry and in academics. Wu was also active in creating products such as a protein mask for skin regeneration, a protein fiber for anti-aging, and a testosterone-based nasal spray to be sold to the general public, including to markets in China.

3. The Mass Spectrometry Center at Auburn University, which Wu directed, was designed to provide testing and experiments on compounds and samples of

biological or genetic material. The Center, under Wu's direction, performed approximately 1,300-2,500 tests a year.

## Anabolic Steroids

4. Anabolic steroids are synthetically produced variants of the naturally occurring male hormone testosterone that are abused in an attempt to promote muscle growth, enhance athletic or other physical performance, and improve physical appearance.

5. Testosterone, nandrolone, stanozolol, methandienone, and boldenone are some of the most frequently abused anabolic steroids.

6. Anabolic steroids are ingested orally, injected intramuscularly, or applied to the skin. The doses abused are often 10 to 100 times higher than the approved therapeutic and medical treatment dosages. Users typically take two or more anabolic steroids at the same time in a cyclic manner, believing that this will improve their effectiveness and minimize the adverse effects.

7. A wide range of adverse physical and mental effects is associated with the use or abuse of anabolic steroids. These effects depend on several factors including: age, sex, the anabolic steroid used, amount used, and duration of use. These effects are particularly damaging to adolescents.

8. Anabolic steroids, including testosterone, are Schedule III substances under the Controlled Substances Act, and are therefore illegal to possess unless specifically approved by the Drug Enforcement Administration (DEA) or prescribed by a treating

physician. Only a small number of anabolic steroids are approved for either human or veterinary use.

9. The DEA, through enforcement of the Controlled Substances Act, strictly controls dangerous drugs, such as anabolic steroids. Any entity or individual wishing to manufacture, receive, dispense, administer, conduct research with, or possess anabolic steroids, must have properly applied for and have been issued the appropriate form of DEA registration. Entities or individuals, other than individuals who have acquired anabolic steroids, usually through prescription or other legitimate means, for a therapeutic or medicinal purpose (an end user), must be registered with DEA to handle these materials. It is usually the case that those individuals wishing to conduct research with anabolic steroids are medical practitioners already properly registered with DEA to handle anabolic steroids, or are scientific researchers of some sort seeking such proper registration to carry out research.

10. Most illicit steroids are smuggled into the U.S. from abroad. Steroids are also illegally diverted from legitimate sources (theft or inappropriate prescribing). The Internet is the most widely used means of buying and selling anabolic steroids. Steroids are also bought and sold at gyms, bodybuilding competitions, and schools from teammates, coaches, and trainers.

### Michael Heryford and Hal Clayton

11. Beginning in at least May 2014, and continuing until at least December 2014, co-conspirators Michael Heryford and Hal Clayton operated and managed an anabolic steroid ring that operated, at least in part, in the Dallas Division of the Northern

District of Texas. Prior to May 2014, Heryford was involved in testing anabolic steroids as part of crime ring.

12. Heryford and Clayton employed and/or supervised other individuals to work with them in distributing anabolic steroids. Heryford and Clayton conspired with other individuals to obtain, receive, test, collect and distribute large shipments of anabolic steroids.

13. Upon his orders, shipments of bulk anabolic steroids came to Heryford from addresses in China and from other domestic locations in the United States.

14. Clayton helped in managing the ring from the Northern District of Texas.

### Manufacture and Processing of Anabolic Steroids

15. Upon receipt, Heryford shipped certain ingredients, used to manufacture anabolic steroids, to other co-conspirators in Dallas.

16. These individuals included Hal Clayton and Jason Quiroga. Clayton and Quiroga, and others known to the Grand Jury, received the materials from Heryford and processed it in a lab that they controlled which was located in Forney, Texas, which is located in the Northern District of Texas. These co-conspirators also used an address in Dallas, Texas to store, package, and ship anabolic steroids

### Sales of Anabolic Steroids

17. Heryford and others advertised their products on websites such as www.eroids.com (a website that exists solely to bring together buyers and sellers of clandestinely produced steroids) where illicit purchasers could contact and obtain product from Heryford's website www.trustedanabolicsolutions.net. Heryford was known by his

handle "Angus" on www.eroids.com. This website stated that the products sold on the site "exceed the highest quality control standards in the industry. They are made in North America. The steroids sold through our site are highly effective, completely safe, and 100% legit."

18. In an effort to obtain a greater number of customers and to increase overall sales (in both price and volume), Heryford sought to provide his customers (both actual and potential) with testing and the results thereof related to the quality and purity of the anabolic steroids he and his co-conspirators were selling. Heryford's customers commonly requested information from him regarding the purity and quality of the products he was selling.

19. Heryford was unable to perform these tests himself because he both lacked access to the necessary testing equipment and because he lacked the scientific background to perform the tests.

### Scott Davis, aka "BeakerMuppett"

20. Through the website eroids.com, Heryford began to communicate with Scott Davis, who was known by his avatar "Beaker" or by "beakermuppett," in or about April 2013. Davis was a recreational steroid user and also an employee at Auburn University between February 2006 and November 2013. Davis worked as an IT employee at Auburn University.

21. Davis offered to facilitate the testing of samples of certain anabolic steroids for Heryford in exchange for certain payments of a portion of the testing fees paid to Heryford.

Superseding Indictment– Page 5

22.  Davis sought out and utilized Wu to perform the testing for Heryford. When Davis received shipments of samples of anabolic steroids from Heryford, he would deliver them to Wu and would provide a $10 payment per sample to Wu's staff for the testing. This money was passed through to Auburn University.

23.  Wu personally tested samples of anabolic steroids for Davis and Heryford. On certain occasions, Wu was assisted by a graduate assistant, known herein as W.D.

24.  Following the testing, Wu drafted a summary of the results of the tests and provided that to Davis and Heryford in the form of a Microsoft PowerPoint presentation by email. On certain occasions, Davis would edit these summaries and results in an effort to make them more reader-friendly.

25.  Heryford posted or provided these test results on eroids.com and trustedanablicsolutions.net, and on certain occasions, provided the results directly to certain customers.

26.  Wu did not return the samples to Davis or Heryford following the testing.

27.  In or about April 2014, Heryford and Wu began communicating directly regarding the testing and shipments, often bypassing Davis.

### Knowledge of Illegality

28.  In or about July 2014, the graduate assistant, W.D., raised concerns with Wu regarding their testing of these anabolic steroids and whether their possession thereof and testing was legal. Wu and W.D. reviewed certain websites maintained by the Drug Enforcement Administration (DEA) and observed that anabolic steroids were controlled substances and possession of anabolic steroids was illegal.

29. On or about July 28, 2014, Wu communicated this to Davis, and stated that that W.D. believed that they (Wu, Davis, and W.D.) were "way out of our boundary" and that they "should not be involved." Davis agreed that the testing should stop.

30. Nonetheless, and without W.D.'s knowledge, in or about September 2014, Wu and Davis resumed testing for Heryford, despite knowing that possession of anabolic steroids was illegal without an appropriate prescription or DEA registration.

31. On certain occasions, Heryford would disguise the nature of the packages he sent Wu. For example in or about October 2014, Heryford disguised one package of anabolic steroids he sent Wu as Chinese Coconut Milk Tea mix.

**Wu was Provided with Other Illegal Drugs for His Own Uses**

32. In or about the fall of 2014, in the midst of testing of anabolic steroids for Heryford, Wu was attempting to develop certain products that he hoped to patent and market to consumers. This included a testosterone-based nasal spray.

33. In creating this product, Wu required access to certain compounds, including testosterone and human growth hormone (hGH). Wu sought to obtain these compounds from Davis and Heryford.

34. Wu knew that it would be expensive and in the case of testosterone, illegal, to obtain these products legally in the United States from legitimate suppliers or possess them without a prescription and/or the appropriate registration.

35. Heryford provided significant amounts of hGH to Wu and sent them to Wu directly via mail.

36. Wu also sought to provide certain amounts of hGH to clients he maintained in China and sought to obtain that hGH from Davis and/or Heryford.

37. Eventually, Heryford provided Wu with information that allowed Wu to purchase hGH directly without going through Heryford.

### Sales Volume

38. As a result of Wu's testing, at least in part, Heryford and Clayton sold approximately $106,000-$147,000 in anabolic steroids per month between August 2014 and November 2015. Following expenses, Heryford and Clayton collectively made profits between $66,000 and $135,000 per month during this same time frame – that is approximately $600,000 over a seven month period.

## Count One
### Conspiracy to Possess with Intent to Distribute a Controlled Substance
### [Violation of 21 U.S.C. § 846]

39. The United States Attorney re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 38, as if fully set forth herein.

40. Starting at least in or about September 2014, and until in or about January 2015, in the Dallas Division of the Northern District of Texas and elsewhere, the defendant, **Yonnie Wu**, (aka Shunyong Wu, aka Shun Y. aka Wu, Hiyonnie Wu), knowingly and intentionally combined, conspired, confederated and agreed with other persons, including but not limited to Michael Heryford and Scott Davis, to commit the following offense against the United States: to possess with intent to distribute and dispense a Schedule III controlled substance, to-wit: anabolic steroids, in violation of 21 U.S.C. § 841(a)(1).

All in violation of 21 U.S.C. § 846.

## Count Two
### Aiding and Abetting a Conspiracy to Possess with Intent to Distribute a Controlled Substance
[Violation of 18 U.S.C. § 2 (21 U.S.C. § 846)]

41. The United States Attorney re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 40, as if fully set forth herein.

42. Starting at least in or about September 2014, and until in or about January 2015, in the Dallas Division of the Northern District of Texas and elsewhere, the defendant, **Yonnie Wu**, (aka Shunyong Wu, aka Shun Y. aka Wu, Hiyonnie Wu), aided and abetted others, including but not limited to Michael Heryford and Scott Davis, in a conspiracy to distribute a Schedule III controlled substance, to-wit: anabolic steroids. That is, Wu deliberately associated himself with the crime and participated in it by testing anabolic steroids for other conspirators and providing the results of those tests to those conspirators.

All in violation of 18 U.S.C. § 2 (21 U.S.C § 846).

## Count Three
## Possession of a Controlled Substance
## [Violation of 21 U.S.C. § 844]

43. The United States Attorney re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 42, as if fully set forth herein.

44. At some point between July 2014, and until in or about January 2015, the defendant, **Yonnie Wu,** (aka Shunyong Wu, aka Shun Y. aka Wu, Hiyonnie Wu), knowingly and intentionally possessed a controlled substance, to wit, anabolic steroids, a Schedule III controlled substance.

All in violation of 21 U.S.C. § 844.

## Count Four
## Possession of a Controlled Substance
## [Violation of 21 U.S.C. § 844]

45. The United States Attorney re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 44, as if fully set forth herein.

46. At some point between July 2014, and until in or about January 2015, the defendant, **Yonnie Wu,** (aka Shunyong Wu, aka Shun Y. aka Wu, Hiyonnie Wu), knowingly and intentionally attempted to possess and/or did possess a controlled substance, to wit, testosterone, a Schedule III controlled substance.

All in violation of 21 U.S.C. § 844.

## Count Five
### Misprision of Felony
### [Violation of 18 U.S.C. § 4]

47. The United States Attorney re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 46, as if fully set forth herein.

48. Starting at least in or about September 2014, and until in or about January 2015, in the Dallas Division of the Northern District of Texas and elsewhere, the defendant, **Yonnie Wu**, (aka Shunyong Wu, aka Shun Y. aka Wu, Hiyonnie Wu), having knowledge of the actual commission of a felony cognizable by a Court of the United States, that is, Conspiracy to Distribute Anabolic Steroids and Possession with Intent to Distribute Anabolic Steroids, did knowingly and willfully conceal and not make known the same to a criminal authority.

All in violation of 18 U.S.C. § 4.

A TRUE BILL

_____
FOREPERSON

JOHN R. PARKER
UNITED STATES ATTORNEY

_____
P.J. MEITL
Assistant United States Attorney
District of Columbia Bar No. 502391
Virginia Bar No. 73215
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214.659.8680
Facsimile: 214.659.8812
Email: philip.meitl@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

DR. YONNIE WU,
aka "SHUNYONG WU",
aka "SHUN Y. WU",
aka "HIYONNIE WU"

SUPERSEDING INDICTMENT

21 U.S.C. § 846
Conspiracy to Possess with Intent to Distribute a Controlled Substance

18 U.S.C. § 2(21 U.S.C. § 846)
Aiding and Abetting a Conspiracy to Possess
with Intent to Distribute a Controlled Substance

21 U.S.C. § 844
Possession of a Controlled Substance

18 U.S.C. § 4
Misprison of Felony

5 Counts

A true bill rendered

DALLAS                                                           FOREPERSON

Filed in open court this 23rd day of September, 2015

                                                                 Clerk
**No warrant to be issued**

UNITED STATES DISTRICT/MAGISTRATE JUDGE
No. 3:15-CR-247-L